UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PIERRE QUINCY PULLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:14-cv-0300-DKL-TWP |
| vs. | ) |
| | ) |
| AMAZON.COM.INDC, LLC, | ) |
| | ) |
| Defendant. | ) |

**Entry on Defendant's Motion for Summary Judgment [Dkt. 36] and Plaintiff's Motion for Leave to File Surreply [Dkt. 59]**

Plaintiff sued Amazon under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 *et seq.*, alleging that Amazon retaliated against him for engaging in protected activity. The parties consented to have the undersigned conduct all proceedings in this matter. 28 U.S.C. § 636(c). Defendant moved for summary judgment, and Plaintiff moved for leave to file a surreply. For the reasons that follow, the Court denies Plaintiff's motion and grants Defendant's motion.

*Factual Background*

Amazon, an online retailer that sells products through the Internet, operates customer order fulfillment centers in Plainfield, Indiana ("IND2") and Indianapolis, Indiana ("IND4"). Amazon has a Productivity Policy that sets forth minimum productivity expectations for its associates.

Amazon hired Pullins in June 2011 as a warehouse associate at IND2. He received Amazon's employment policies and was trained and worked in various positions, including pack, where associates pack boxes to be shipped to customers. In April 2013 Pullins transferred to IND4 where he received additional training in and worked in the pack area. (Hereinafter all dates are in 2013 unless otherwise noted.)

From early in his tenure at IND4, Pullins failed to meet Amazon's productivity expectations of at least 100%. His Area Manager Kathryn Budd coached and counseled him about his poor productivity. He did not meet Amazon's productivity expectations for the weeks ending May 1, 15, and 22.

On June 7, Budd gave Pullins his First Written Warning, indicating that for the six weeks from May 1 to June 5, he failed to meet the performance expectations for his position. The warning also stated that for only two weeks during that six-week period, he achieved the performance expectation. Pullins disputed the warning, claiming that work assignments were unfair and that the expected productivity rate was unreasonable for the night shift because there was too much down time. He also challenged the expectation that he was to achieve the same rate as other associates half his age. (Pullins Dep. Ex. 16.) But he did not dispute that the productivity rates reflected in the warning were the rates he actually achieved.

On June 12, Pullins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination.

Pullins did not meet Amazon's productivity expectations for the week ending June 12. On June 18, Budd gave him a Second Written Warning for his poor productivity. The

2

Second Written Warning stated that Pullins failed to meet the performance expectations associated with his position for the six-week period from May 9 to June 12 and that he achieved the performance expectation for overall job function for only one week during that period. Pullins disputed the warning, explaining that he was not rotated around different areas in pack and that he thought the warning was in retaliation for filing a past complaint. He did not, however, dispute that the warning accurately reflected his productivity rates for the relevant weeks.

On June 19, Pullins filed his second Charge of Discrimination with the EEOC, alleging age, race, and gender discrimination as well as retaliation. Amazon received notice of Pullins' first and second EEOC Charges on July 8.

Following receipt of his Second Written Warning, Pullins was offered the opportunity for retraining. Whether the training was offered by Budd or by Area Manager Geoff Witherspoon is irrelevant; what matters is that it was offered. On July 5, Pullins was retrained in pack. For the week ending July 3, Pullins achieved an 87% productivity rate. For the week ending July 10, he achieved 98%, and for the week ending July 17 he achieved 99%. (Pullins Dep. 74.) Thus, immediately following his retraining, Pullins' productivity trended upward, but he still failed to meet Amazon's productivity expectations of at least 100%.

Pullins was on medical leave from July 18 until July 29, at which time he returned to work.

On August 1, Budd gave Pullins a third and Final Written Warning for his productivity from June 5 to July 17. (The warning was not delivered earlier since Pullins

3

had been on a leave of absence.)  The warning stated that for the six weeks from June 5 to July 17, Pullins failed to meet the performance expectations for his position and that he achieved the performance expectation for overall job function for none of the weeks during the six-week period.  (Pullins Dep. 72, Ex. 20.)  The warning advised that it was Pullins "final written warning regarding [his] performance in productivity" and that the failure to meet and maintain performance expectations would subject him "to further corrective action up to and including termination."  (Pullins Dep. Ex. 20.)  Pullins disagreed with the warning, arguing that he had requested retraining earlier and had he been retrained earlier, he would have met the productivity rate.  He also noted that his productivity rates were trending up.  (*Id.*)

Pullins did not meet Amazon's productivity expectations for the weeks ending July 31, August 7, or August 28.  He did, however, exceed Amazon's productivity expectations for the weeks ending August 14, August 21, and September 4.

Amazon did not terminate Pullins' employment for the week ending July 31 because Human Resources was investigating a complaint that associates in pack were not being properly rotated within the department.  (Townsend Decl. ¶ 26; Thomas Decl. ¶ 7.)  Amazon did not terminate his employment for lack of productivity for the week ending August 7 because he had improved more than 10% from the prior week, and Amazon hoped he was on an upward trend.  (Townsend Decl. ¶ 27.)  Amazon did not terminate

4

him for the week ending August 28 because he had achieved rate the week before and the week after, and Amazon hoped that the improvement would continue. (*Id.* ¶ 28.)[1]

It did not. For the week ending September 11, Pullins achieved 94% of the productivity rate; for the week ending September 18, he achieved 90.5%; and for the week ending September 18, he achieved 88%. Pullins had no reason to dispute these productivity numbers for those weeks.

Amazon terminated Pullins' employment on September 26. The termination notice summarized his productivity performance for the weeks of September 4, September 11, and September 18. (Pullins Dep. Ex. 23.) Pullins had no reason to dispute that the productivity rates reflected in the termination notice were in fact the productivity numbers he obtained during the weeks at issue. (Pullins Dep. 110.) Similarly, Amazon or its temporary staffing agency Integrity Staffing Solutions has terminated the employment of other Amazon associates and temporary employees for failing to meet productivity expectations.

Amazon had an appeals process policy in effect at IND4 in 2013. Under the policy, if a terminated employee appeals the termination decision, Amazon held a hearing with a panel of peer- and management-level employees. During the hearing, the terminated employee could present argument and evidence in support of his reinstatement. The panel voted to determine whether to reinstate the employee. Associates in good standing

---

[1] In his response brief, Pullins disputes the facts contained in this paragraph, citing to page 80 of his deposition for support. However, page 80 does not contain any evidence controverting the facts as asserted by Amazon in its brief and supported by the Townsend declaration. Therefore, Pullins has not demonstrated disputed facts.

without an active written discipline could volunteer to be on the appeals panel. An appeals hearing was held regarding Pullins' termination. The letter signed by four of the five hearing panelists confirmed his termination; however, it stated that the panel decided to affirm the decision to issue him a final written warning for a safety violation rather than for productivity. Amazon asserts that this was a typographical error.

### *Plaintiff's Motion for Leave to File Surreply*

Plaintiff's motion for leave to file a surreply is untimely, *see* S.D. Ind. L.R. 56-1(d), and does not respond or object to any new evidence cited in Defendant's reply, as Local rule 56-1(d) requires, so the proposed surreply would be improper in any event. The motion is therefore denied.

### *Defendant's Summary Judgment Motion*

The facts are viewed in the light most favorable to Pullins and all reasonable inferences from the record are drawn in his favor. *See Mintz v. Caterpillar Inc.,* 788 F.3d 673, 679 (7th Cir. 2015). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)).

Defendant's request that the Court strike Pullins' appendix as untimely is denied. Although the appendix was filed two days later, the Court in its discretion considers the materials Pullins presented in determining whether he has produced sufficient evidence to reach a jury.

*Title VII Retaliation Claim*

Title VII makes it unlawful for employers to retaliate against employees who engage in an activity protected by the statute. 42 U.S.C. § 2000e–3(a); *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). Pullins response brief clarifies any uncertainty that may arise from his Complaint: he alleges retaliation for filing his two EEOC charges; he does not bring or pursue any claims based on his prior federal district court complaint or his complaint with the National Labor Relations Board. A plaintiff may establish retaliation under either the direct or indirect method of proof. *Mintz*, 788 F.3d at 679. Pullins proceeds under both methods.

Under the direct method, a plaintiff must "produce evidence that he engaged in statutorily protected activity, that he suffered a materially adverse action, and that [the] desire to retaliate was the but-for cause of the adverse action." *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015), *cert. denied*, 135 S. Ct. 2861 (U.S. June 22, 22015); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of 'but-for' causation …. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). The first two elements are not in dispute. Filing an EEOC charge is statutorily protected activity, *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015), and Pullins filed two such charges; thus he can prove that he engaged in statutorily protected activity. In addition, his employment was terminated, which is a materially adverse action.

7

The issue is whether Pullins can establish but-for causation. A plaintiff proceeding under the direct method of proof "may rely on direct evidence, 'which would entail something akin to an admission by the employer ("I'm firing you because you had the nerve to accuse me of sex discrimination!").'" *Harden v. Marion Cnty. Sheriff's Dep't,* No. 14-1713, --- F.3d ----, 2015 WL 5015633, at *4 (7th Cir. Aug. 25, 2015) (quoting *Coleman v. Donahoe,* 667 F.3d 835, 860 (7th Cir. 2012)). And he may "present[ ] a 'convincing mosaic' of circumstantial evidence that would permit the same inference without the employer's admission." *Id.* (quoting *Coleman,* 667 F.3d at 860)). Amazon argues that Pullins cannot proceed under the direct method because: (1) he has no direct evidence of retaliation, and (2) the protected activity—filing EEOC charges—was more than three months before his termination, thus eliminating any temporal proximity. Pullins has no direct evidence of retaliation. He relies instead on what he argues is circumstantial evidence of a causal connection.

A "convincing mosaic" of circumstantial evidence can include: "suspicious timing, ambiguous statements, and 'other bits and pieces from which an inference of [retaliatory] intent might be drawn'; evidence that similarly-situated employees were treated differently; and evidence that the employer's stated reason for the decision was pretext." *Harden,* 2015 WL 5015633, at *4 (quoting *Hobgood v. Ill. Gaming Bd.,* 731 F.3d 635, 643-44 (7th Cir. 2013)). Pullins argues that there is evidence of suspicious timing between the filing of his EEOC charges in June 2013, the July 2013 notice to Amazon from the EEOC that Pullins wanted $500,000 to settle the charges, and his September 26, 2013 termination. "Suspicious timing alone rarely establishes causation, but if there is corroborating

evidence that supports an inference of causation, suspicious timing may permit a plaintiff to survive summary judgment." *Sklyarsky*, 777 F.3d at 898; *see also Mintz*, 788 F.3d at 681 ("[S]peculation based on suspicious timing alone … does not support a reasonable inference of retaliation.") (quotation omitted); *Coleman*, 667 F.3d at 861 ("[W]hen there is corroborating evidence of retaliatory motive … an interval of a few weeks or even months may provide probative evidence of the required causal nexus.").

Even if the timing of these events was suspicious, and that is doubtful, *see, e.g., Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 n.31 (7th Cir. 2012) (concluding that plaintiff was unable to show a connection between the filing of his complaint and the employer's administration of warnings two months later); *Argyropoulos v. City of Alton,* 539 F.3d 724, 734 (7th Cir. 2008) (holding that a seven-week interval between plaintiff's sexual harassment complaint and subsequent termination "does not represent that rare case where suspicious timing, without more, will carry the day"), Pullins has produced no corroborating evidence that supports a reasonable inference of causation. To the extent he tries, by challenging Amazon's decision to place him on a Final Warning when his productivity rate was 99%, he does not succeed. Whether holding its associates to a 100% productivity rate is a good business decision is not for this Court to decide. "A federal court does not sit as a 'super-personnel department,' second-guessing an employer's legitimate concerns about an employee's performance." *Mintz*, 788 F.3d at 680 (rejecting plaintiff's argument that employer's expectations were unrealistic). Pullins may have been very close to Amazon's 100% productivity expectation; nonetheless, he failed to meet it—again.

9

Pullins' evidence fails to raise a reasonable inference of a causal connection between any of his protected activity and the termination of his employment. Therefore, if he is going to defeat Amazon's summary judgment motion, he must do so using the indirect method of proving retaliation.

Under the indirect method, a plaintiff must show that he: "(1) engaged in statutorily protected activity; (2) met [his employer]'s legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in protected activity." *Mintz*, 788 F.3d at 681 (quotation omitted). If he "establishes a prima facie case under the indirect method, 'a presumption of [retaliation] is triggered' and the burden shifts 'to the employer to articulate some legitimate, [nonretaliatory] reason for its action.'" *Harden*, 2015 WL 5015633, at *3 (quoting *Coleman,* 667 F.3d at 845). If the employer articulates such a reason, the burden reverts to the plaintiff, "who must present evidence that the stated reason is a 'pretext,' which … permits an inference of unlawful discrimination." *Id.* (quoting *Coleman*, 667 F.3d at 845).

Amazon argues that Pullins cannot demonstrate a prima facie case of retaliation. It first claims that his 2013 federal court complaint did not constitute protected activity because it did not make any claims of discrimination under Title VII. That is correct, but Pullins filed two charges with the EEOC, and therefore he can establish that he engaged in protected activity. Pullins also can show that he suffered an adverse employment action: his employment was terminated. Therefore, the Court's focus is on the second and fourth prongs of the prima facie case.

10

Pullins cannot show that he met Amazon's legitimate performance expectations. The undisputed evidence is that Pullins repeatedly failed to meet Amazon's productivity standards for most weeks during his employment at IND4. And he was repeatedly coached and counseled, and even retrained, but his overall performance did not improve.[2]

Pullins responds that he was meeting Amazon's legitimate expectations because after he received the retraining he requested, his productivity rate trended upward. His productivity rate did improve three weeks in a row, but he still fell short of Amazon's productivity expectations. Even assuming that Pullins was correct that he should have achieved 100% for the week ending July 17, he would fall short for the majority of the weeks following his retraining.[3] And his productivity took a downward trend in September. Pullins' evidence fails to raise a reasonable inference that he was meeting Amazon's legitimate performance expectations.

Furthermore, he cannot identify a similarly situated employee who was treated more favorably. Pullins points to Naima Garcia who he heard Amazon re-hired after she

---

[2] Pullins cites to the determination of the Indiana Department of Workforce Development that he was not discharged for just cause and that he was not warned his job was in jeopardy. (Pl.'s Ex. A.) Under Indiana law, however, such a determination "is not conclusive or binding and shall not be used as evidence in a separate or subsequent action or proceeding between an individual and the individual's present or prior employer." Ind. Code § 22-4-17-12(h). Therefore the determination does not raise a triable issue of fact.

[3] Pullins disputes that he achieved 99% of his productivity rating the week ending July 17 and testified that he believed it was higher because he thought he was doing well that week. He has not seen any document that showed his rate was 100%. (Pullins Dep. 73.) An employee's "own opinion about his work performance is irrelevant." *Sklyarsky*, 777 F.3d at 897. Pullins has no evidence to support his opinion about his productivity rating for this week.

was terminated for poor productivity. Amazon responded that it never employed, let alone rehired Garcia; and, regardless, she was terminated for poor productivity, negating this element of the prima facie case. The latter argument eliminates the need to consider whether Garcia was employed by Amazon or by Integrity Staffing Solutions, Inc.[4] The record establishes that both Pullins and Garcia suffered the same adverse action for poor productivity: termination of employment. Thus, he cannot show that Garcia was treated more favorably than he.

Pullins cannot establish a prima facie case of retaliation. But even if he could do so, Amazon has offered a legitimate, nondiscriminatory reason for terminating his employment: his repeated failure to meet its performance expectations. Thus, Pullins bears the burden of presenting evidence that this reason is a pretext for retaliation.

The Court "do[es] not evaluate whether the stated reason 'was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge.'" *Harden*, 2015 WL 5015633, at *5 (quoting *Harper*, 687 F.3d at 311). Pretext "involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Id.* (quoting *Argyropoulos,* 539 F.3d at 736); *see also Coleman*, 667 F.3d at 852 ("The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge.").

---

[4] Nonetheless, the record establishes that she was employed by Integrity, not Amazon. (*See* Townsend Decl. ¶¶ 42-44.) Pullins cites no evidence to show that he applied with Integrity to work at a different Amazon location, so he cannot show that Garcia was treated more favorably with respect to re-employment.

To show pretext, Pullins argues that Amazon did not terminate his employment as soon as it could have if its real reason was his poor productivity. He testified that "if it was all about rate, [Amazon] would have terminated me the first time I didn't hit rate after the third and final warning." (Pullins Dep. 111.) Pullins maintains that Amazon's explanation that it kept him on during its peak season and hoped that his production rate would remain above 100% somehow raises an inference of pretext and that Amazon actually was satisfied with his productivity. He testified that Amazon "chose to retain me because they were satisfied with my work performance. If they weren't, they would have terminated me." (Pullins Dep. 112.) Yet, he acknowledged that Amazon "kept me because they needed me … because we were in the peak season." (*Id.*) Amazon's explanation that it needed Pullins during the peak season and hoped his performance improvement would continue fails to raise a reasonable inference of pretext. It is a bit ironic that Pullins is complaining that Amazon gave him the benefit of the doubt and gave him more chances to improve his performance in order to keep his employment. Pullins has offered nothing to reasonably suggest that Amazon's explanations were phony.

Pullins asserts that Amazon's "shifting policies" demonstrate pretext. In this regard, he relies on Amazon's failure to terminate him or present him with negative feedback regarding his performance from August 2 until September 26, when his performance warranted such consequences. That Amazon did not present Pullins with any written discipline for poor productivity for that time period fails to raise an inference of pretext. Amazon already had presented Pullins with his third and Final Written

13

Warning. Pullins fails to identify any Amazon policy or other evidence to suggest that any further warnings were required. Pullins further argues that Amazon kept him on so as to create a gap between his protected activity and his termination. This is a creative argument, but not indicative of pretext. Pullins cites no evidence whatsoever to support this speculation.

In another effort to show pretext, Pullins argues that Amazon did not abide by its appeals process policy. Specifically, he claims that Amazon allowed Tyrone Miller to sit on the appeals panel when he should not have been on the panel, that the necessary five signatures were not obtained on the appeals decision letter, and that Benita Townsends' Declaration is misleading as to whether five signatures were required. Pullins also challenges whether the decision letter actually contained a typographical error, or was an effort to falsify the record.

Amazon produced evidence that Miller was eligible to serve on the appeals panel (*see* Townsend Decl. ¶¶ 36-41), and Pullins has offered nothing to refute that evidence. Nor has he identified any evidence to establish that Amazon violated its appeals policy by failing to have five signatures on the appeals decision letter. Even if Amazon did violate its appeals policy in this manner, there is no reasonable inference of pretext. Furthermore, Pullins does not dispute that he was advised the same day as the appeals hearing that the panel had upheld his termination. The missing signature was inconsequential. Finally, the Townsend Declaration is not misleading: it indicates that there were five members on the appeals panel, and the panel's letter to Pullins was attached to the declaration as an exhibit. A simple review of that letter shows that it was

14

signed by four of the five panelists although there is a space for five signatures. (Townsend Declartion, Ex. F.)

Pullins has not presented evidence from which a reasonable jury could find that Amazon's justification for terminating his employment was a pretext for unlawful retaliation. Therefore, he cannot prevail under the indirect method of proof.

Accordingly, the evidence fails to suggest retaliation under both the direct and indirect methods of proof. Amazon is entitled to summary judgment.

*Conclusion*

Based on the foregoing, the Court **DENIES** Plaintiff's *Motion for Leave to File Surreply* [Dkt. 59], **DENIES** Defendant's request to strike Plaintiff's Appendix, and **GRANTS** Defendant's Motion for Summary Judgment [Dkt. 36].

Entered this date: 10/08/2015

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

ECF Distribution to counsel of record

U.S. Mail to:

Pierre Quincy Pullins
1227 N. Rural St.
Indianapolis, IN 46201

15